**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREA BILLUPS-DRYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 23 C 2429** |
| | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| **THE CITY OF HARVEY, an ILLINOIS** | ) | |
| **municipal corporation, CHRISTOPHER** | ) | |
| **CLARK, individually and as an agent of the** | ) | |
| **City of Harvey, and Does 1-50,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Andrea Billups-Dryer ("Plaintiff") brings this pro se action under 42 U.S.C §§ 1983, 1985, and 1986 against the City of Harvey, Illinois and its mayor, Christopher Clark ("Defendants"), alleging that Defendants authorized the dumping of debris and demolition on Plaintiff's properties located in Harvey, Illinois. (Am. Compl. [6] ¶ 7). Plaintiff has also brought supplemental state claims against Defendants for conversion and trespass to land arising from the same conduct. (*Id.* ¶¶ 6-7). Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim on which relief may be granted. For the reasons stated below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is a resident of Cook County, Illinois who claims ownership of four properties located in Harvey, Illinois. (*See* Am. Compl. ¶¶ 5, 13). These properties are located at 15402 Oakley Court, 15408 Oakley Court, 15409 Oakley Avenue, and 15419 Oakley Avenue, all within

the Coronet Village neighborhood of Harvey.[1]  (*Id*.)  Plaintiff names the City of Harvey and its Mayor, Christopher Clark, as Defendants.

Although Plaintiff's pleadings are not a model of clarity, the court gleans the following from the allegations contained in the Amended Complaint and information set forth in her memorandum in opposition to the motion to dismiss: since at least 2009, Defendants have sought to redevelop the Coronet Village area of Harvey, Illinois for residential use.  (*See* Pl.'s Opp'n [23], 6, *see also* Ex. 1 to Defs.' Reply [30], 8-9.)  Though neither party fully explains the details or scope of this redevelopment plan, it appears from the Amended Complaint that some or all of Plaintiff's properties in Coronet Village are in the area the City intended to redevelop.  (*See* Ex. 1 to Defs.' Reply at 61-62; *see also* Am. Compl. ¶ 16.)  Plaintiff resists the City's redevelopment effort; she claims to have met with Mayor Clark in her home at some point "[p]rior to [Defendants' alleged] actions" and explained that "all she wanted to do" was "to be allowed to rehab" her properties and rent them out without "constant harassment" from the City—the Amended Complaint does not elaborate on what this "constant harassment" consisted of, or how Plaintiff's rehab plans would have been consistent or inconsistent with the City's redevelopment proposal.  (*Id*. ¶ 17.)

Evidently unsuccessful in attempting to redevelop the Coronet Properties with Plaintiff's permission, Plaintiff claims that the Defendants changed their strategy.  (*See Id*. ¶¶ 8-9.)  First, on October 27, 2020, Defendants filed Resolution 2530 for Comprehensive Redevelopment and Economic Incentive Agreement ("the Resolution" or "Resolution 2530") with the Cook County Recorder of Deeds.  (*See* Pl's Opp'n at 5-6; *see also* Ex. 1 to Defs.' Reply at 1).[2]  Originally

---

[1]    Plaintiff has, in her pleadings and opposition motion, equivocated on whether she owns and/or is claiming damages to a fifth parcel located at 15400 Oakley Court. (*Compare* Am. Compl. ¶ 13 *with id.* ¶ 20 *and* Pl.'s Opp'n at 1).  Furthermore, neither party has explained to the court what exactly these properties are—multi-family apartments, single-family homes, undeveloped lots, etc.—but as Plaintiff's pleadings suggest that she intended the properties for rent (*See* Am. Compl. ¶ 17), the court will assume that they are apartment buildings.

[2]    Plaintiff only references the Resolution in her pleadings without attaching the document itself, but Defendants have provided the full text of the Resolution as Exhibit 1 to their reply. The document is also publicly accessible through the Cook County Clerk's Office.

passed some ten years earlier, the Resolution purported to require the City to use best efforts to acquire various properties known as the "Dixie Property" in Coronet Village and convey them to a private developer. (*See* Ex. 1 to Defs.' Reply at 2-4). The Resolution authorized the developer to demolish the conveyed property pursuant to a referenced—but not included in the Resolution or elsewhere in the record—"Demolition Plan." (*Id*. at 17-18). While Plaintiff's properties were not within the area described as the "Dixie Property," the Resolution designated two addresses describing Plaintiff's properties—15408 Oakley Court and 15409 Oakley Avenue— among three parcels to be acquired and conveyed as "Ancillary Property." (*Id*. at 61-62 (identifying the properties), 59 (designating as "Ancillary Property")). The Resolution defined "Ancillary Property" as property neighboring the Dixie Property which was, according to the Resolution, "prone to flooding" and, as a result, "abandoned" by "the majority of the owners of the parcels comprising the Ancillary Property." (*See id*. at 8).[3] The Resolution thus authorized and obligated the City to acquire the Ancillary Property through "any and all available methods," including condemnation, foreclosure, tax purchasing, and "all standard acquisition methods; and/or any other means permitted by law." (*Id*. at 18). The Resolution was approved by the Harvey City Council on December 30, 2009. (*Id*. at 3). It appears, however, that the City took no action to carry out the Resolution for over a decade; Defendants were still offering the Coronet Village properties to private developers as late as 2022. (*See* Am. Compl. ¶ 16; *see also* Pl's Opp'n at 5). At no point in the negotiation, passage, or filing of the Resolution was Plaintiff given notice that her property was subject to a redevelopment plan, or that the City sought to formally acquire her property. (*See* Am. Compl. ¶ 8).

Though the Resolution remained dormant for over a decade after its passage, shortly after filing the Resolution with the County Recorder in October 2020, Defendants appeared to spring

---

[3] The Resolution does not identify who the City believed the owners of the Ancillary Property to be, nor does it explain which of the properties the City deemed were in fact abandoned.

into action.  On April 6, 2021, Plaintiff claims to have first discovered that Defendants had authorized City employees to enter Plaintiff's properties at 15402 Oakley Court and 15408 Oakley Court, and dump "tons of debris" including "huge piles of tree trunks" on Plaintiff's property. (Pl.'s Opp'n at 2.).  Days later, on April 15, 2021, Plaintiff first noticed a "large hole" in the wall of a structure on her property at 15419 Oakley Avenue due to bricks being missing or removed, with similar holes present in other buildings she owned.  (Ex. E to Pl.'s Opp'n).  Plaintiff claims that Defendants authorized City employees to "tear[] off the roof and bricks with a backhoe" at one or more of her properties (the Amended Complaint does not specify which one).  (*Id.* ¶ 15).  Plaintiff then discovered the recording of the Resolution in the County Recorder's Office, (Pl.'s Opp'n at 2), and promptly filed a document with the County Recorder challenging the Resolution and asserting her ownership of the Ancillary Property on April 28, 2021.  (Ex. E to Pl.'s Opp'n).  On May 13, 2021, Plaintiff found that additional debris had been dumped on her property and that a sidewall had collapsed in the unit "next to 15411 Oakley Avenue." (*Id.*).  The Amended Complaint claims that Defendants took such action in the absence of a court order and without notice to Plaintiff, whom Defendants knew to be the rightful owner to the properties.  (Am. Compl. ¶ 8).

On May 17, 2021, Plaintiff contacted Mayor Clark and informed him that City employees had dumped debris on her property and that she was aware of the filing of the Resolution; she implored him to stop his employees from tearing down her buildings, warning that the City's actions "would leave [her] no other choice than to take legal action against the City." (Pl's Opp'n at 2-3).  Apart from denying knowledge of the Resolution and stating that he believed that the City owned the properties, the Mayor directed Plaintiff to contact the City administrator and promised to get back to her.  (*Id.*).  Plaintiff was unable to get a response from the City administrator, and was unable, despite repeated additional calls, to get in touch with Mayor Clark again.  (*Id.*)

Between October 3 and October 5, 2021, the front of Plaintiff's property at 15409 Oakley Avenue "was collapsed."  (Ex. E to Pl.'s Opp'n).  Most recently, in October 2023, Plaintiff noticed propane tanks and further dumping near her property in Coronet Village.  (*Id.*)  As a result of

4

Defendants' actions, Plaintiff alleges that she has been harmed by the reduction of value of the properties in Coronet Village. (Am. Compl. ¶ 19).

Plaintiff initially filed a Complaint for a violation of constitutional rights on April 18, 2023, under 42 U.S.C. §§ 1983, 1985, and 1986, specifically for claims arising out of the demolition occurring on May 13, 2021. (Compl. [1], 2). On June 13, 2023, Plaintiff filed an Amended Complaint, including claims dating back to the alleged dumping on April 6, 2021 and alleging that Defendants conspired to violate her rights. (*See* Am. Compl.). The Amended Complaint further alleged state law claims of conversion (Count III) and trespass to land (Count IV). (*Id.* ¶ 22). Plaintiff seeks an injunction requiring Defendants to cease the dumping and demolition of her property, as well as compensatory damages. (*Id.* ¶ 23).

Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, contending that (1) Plaintiff's claims are barred by the statute of limitations, (2) Plaintiff's allegations are not actionable under §§ 1983, 1985, or 1986 because the allegations sound in negligence, (3) Plaintiff failed to plead sufficient facts to meet the elements of §§ 1983, 1985, or 1986, (4) Plaintiff's state law claims are factually duplicative of her federal civil rights claims, and (5) Plaintiff's claims against Mayor Clark in his official capacity are redundant given the claims against the City directly.[4] (*See generally* Defs.' Mot. to Dismiss [12]).

---

[4]       In Defendants' reply to Plaintiff's response in opposition, Defendants introduce a new argument in support of dismissal: they contest Plaintiff's ownership of the properties in Coronet Village and draw the court's attention to records, or the absence of records, in the County Recorder's Office that appear to raise questions about Plaintiff's title to the Coronet Village properties. (Defs.' Reply [30], 6-7). The court will not consider the merits of this argument at this time. It is settled law in the Seventh Circuit that arguments raised for the first time in a reply brief are deemed forfeited. *Bonte v. U.S. Bank, N.A.*, 624 F. 3d 461, 466 (7th Cir. 2010). While Plaintiff's response provided numerous new factual explanations, Defendants' challenge to Plaintiff's ownership of the Coronet Village properties was available and appropriate at the time of their initial motion to dismiss. Plaintiff has alleged that she owns the Coronet Village properties in her Amended Complaint (Am. Compl. ¶ 13), and absent a direct contradiction in a formal adjudication or public record—which Defendants have not identified—the court accepts these allegations as true.

Plaintiff filed a memorandum in opposition to Defendants' motion to dismiss, elaborating on the allegations introduced in the Amended Complaint and providing a more detailed timeline of Plaintiff's alleged injuries.  (*See* Pl's Opp'n).

## **LEGAL STANDARD**

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint "by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015).  To survive such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Applying this standard, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).  "Conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).  While a complaint "may not be amended by the briefs in opposition to a motion to dismiss," *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989), facts stated in an opposition brief "may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) (citing *Dausch v. Rykse*, 52 F.3d 1425, 1428 n.3 (7th Cir. 1994)) (other citations omitted).  Additionally, as Plaintiff has appeared pro se in this matter, the court will construe the complaint liberally and hold it to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

Because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations," a statute-of-limitations defense is rarely resolved at the motion-to-dismiss stage. *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Dismissal on limitations grounds may be warranted, however, where "the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, LP, 559 F.3d 671, 674–75 (7th Cir. 2009).

## DISCUSSION

### I. Statute of Limitations

The time for filing a § 1983 claim is determined by "the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). This is the case regardless of whether the conduct being challenged sounds in a different state law offense, such as conversion or trespass. See *Malone v. Ryan*, 47 Fed. Appx. 410, 411 (7th Cir. 2002) ("[A]ll § 1983 claims filed in Illinois are subject to [the statute of limitations in Illinois personal injury law] . . . . The applicable statute of limitations is not . . . determined by searching for the most analogous state-law claim."). Thus, for claims arising in Illinois, the statute of limitations for claims under Section 1983 is two years, the state statute of limitations for a claim of personal injury. *Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017) (citing 735 ILCS 5/13-202). The same rule applies for Section 1985 claims. *See Ross v. Illinois*, 48 F. App'x 200, 202 (7th Cir. 2002). The statute for limitations for claims brought under § 1986 is one year. 42 U.S.C. § 1986.

The date that a federal civil rights cause of action accrues for the purposes of statute of limitations is determined by federal law. *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). "A claim brought under the Fourteenth Amendment for deprivation of property without due process accrues when the injury is 'complete,' which is when the actual deprivation occurs." *Scott v. Chicago Police Dep't*, No. 14 C 6657, 2015 WL 394360, at *3 (N.D. Ill. Jan. 29, 2015), *aff'd sub nom. Scott v. City of Chicago*, 619 Fed .Appx. 548 (7th Cir. 2015). Where the plaintiff does not discover the violation immediately, however, the federal "discovery rule" applies. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law)[.]"). In other terms, "the clock on federal civil rights claims begins to run when the plaintiff becomes aware of his injury." *Ross*, 48 F. App'x at 202 (citing *Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir.2001)).

Plaintiff's Amended Complaint, read liberally and in light of the explanations provided in her opposition brief, alleges three discrete events giving rise to an injury: a dumping of debris discovered on April 6, 2021; a partial demolition discovered on April 15, 2021; and dumping and partial demolition discovered on May 13, 2021. Additionally, the complaint alleges a conspiracy to violate Plaintiff's constitutional rights under § 1985 and § 1986 that was allegedly formed at some point prior to these events.

### A.    April 6, 2021 and April 15, 2021 Injuries

Plaintiff has alleged that she discovered that Defendants had dumped debris on her property on April 6, 2021. Any cause of action arising from those actions accrued on that date, meaning that Plaintiff had until April 6, 2023 to file a claim under § 1983 or § 1985, and until April 6, 2022 to file an action under § 1986. Similarly, Plaintiff alleges that she discovered a partial demolition of her property on April 15, 2021. Thus, she had until April 15, 2023 to file an action

under §§ 1983 and 1985, and until April 15, 2022 to file an action under Section 1986. Because Plaintiff did not file any action until April 18, 2023, her claims arising from the April 6, 2021 and April 15, 2021 incidents fall outside the statute of limitations period.

Plaintiff has argued that these claims are nevertheless timely under three theories: the continuing violation theory (Pl.'s Opp'n at 8-9), equitable estoppel (*id*. at 9), and equitable tolling (*id*. at 10). As explained below, none of Plaintiff's arguments is persuasive.

First, the continuing violation doctrine delays the accrual of a claim "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Village of Lemont.*, 520 F.3d 797 (7th Cir. 2008). The doctrine "allows a Plaintiff to reach back to the beginning of a violation and recover for all damages even if that beginning lies outside of the limitations period." *Limestone Dev. Corp. v. Village of Lemont*, 473 F. Supp. 2d 858, 875 (N.D. Ill. 2007), *aff'd sub nom. id.* (citing *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir.2001)). The doctrine may apply "when the earlier violation may be recognizable as actionable only in light of later events." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir.2001). The continuing violation doctrine does not delay the accrual of claims arising from discrete acts that are independently actionable, however. *See Limestone Dev. Corp.*, 520 F.3d at 801 ("The statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries . . . . [The continuing violation doctrine] is thus a doctrine not about a continuing, but about a cumulative, violation.")

Here, while Plaintiff has alleged a series of actions by Defendants' employees in dumping debris and commencing demolition on her properties, the allegations also demonstrate that the Defendants' conduct took place in discrete steps. As Plaintiff has claimed that the act of entering her property and dumping debris rises to the level of a constitutional violation (see Am. Compl. ¶ 12), both the dumping on April 6, 2021 and the demolition on April 15, 2021 would have been immediately actionable under her theory. Therefore, the continuing violation doctrine does not delay the date of accrual for these claims.

Second, Plaintiff raises the argument of equitable estoppel. Generally, equitable estoppel allows an otherwise time-barred claim to proceed where the delay in filing was caused by a defendant's improper acts. *See Shropshear v. Corp. Couns. of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) ("[T]he doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations."). Because equitable estoppel applies to tolling, its applicability in federal civil rights action is a question that, unlike accrual, is determined by state law. *Heard*, 253 F.3d at 317 ("The statute of limitations for suits under section 1983 is supplied by state law—not only the limitations period but also the tolling rules.") (citations omitted). For suits in Illinois, the Seventh Circuit has recognized Illinois' fraudulent concealment statute as the applicable rule for determining whether equitable estoppel applies in a case such as this one. *See Shropshear*, 275 F.3d at 597 (7th Cir. 2001). Under this statute, "if a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto," the statute of limitations is tolled to five years from the date of accrual. *See* 735 ILCS 5/13–215 (West). Under Illinois law, "equitable estoppel is available only when the defendant has used misrepresentations or concealment—rather than threats of reprisal—to prevent the plaintiff from suing." *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006) (citing *Parks v. Kownacki*, 193 Ill.2d 164, 737 N.E.2d 287 (Ill. 2000)). Courts apply this doctrine "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada*, 920 F.2d at 450-51.

Plaintiff here has made no allegations that would support an equitable estoppel argument. Plaintiff claims that Defendants delayed in responding to her numerous attempts to contact the Mayor and city officials (*see* Pl.'s Opp'n at 3), but the pleadings do not identify a single material fact actively concealed or misrepresented by Defendants that delayed Plaintiff's ability to commence a lawsuit. Indeed, Plaintiff herself has alleged that as early as May 17, 2021, she warned Defendants that their actions "would leave [her] no other choice than to take legal action against the City." (*See id.*) That warning confirms that although the City's actions allegedly

harmed her inability to stop demolition, they did not impede her ability to initiate a lawsuit against the City.

Lastly, Plaintiff has argued that equitable tolling applies. Generally, in contrast to equitable estoppel, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim" even absent "wrongful—or any—effort by the defendant to prevent the plaintiff from suing." *Cada*, 920 F.2d at 451. Like equitable estoppel, equitable tolling refers to the tolling of the statute of limitations, and Illinois law determines its application here. Notably, "it remains unsettled whether the doctrine exists in Illinois." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *see also Hollande*r, 457 F.3d at 693 n.3 (discussing how Illinois law uses equitable tolling and equitable estoppel interchangeably).

Even assuming equitable tolling is available to Plaintiff, the doctrine would not apply to these facts. Equitable tolling requires a showing that, even with the exercise of due diligence, a Plaintiff lacks the ability to obtain vital information on the existence of a claim. As Plaintiff's pleadings here make clear, the basis of her claims was the alleged dumping and demolition of her property without proper notice or basis in law. The existence of her claim was thus evident and obvious from the moment that she observed the "huge tree trunks," "debris," and partial demolitions of her property. In short, Plaintiff has not made any showing in her pleadings that she was in fact delayed in discovering the existence of her claim.

### B.      May 13, 2021 Injuries

Plaintiff has also alleged, however, that she discovered a new round of dumping and demolition on May 13, 2021. Those allegations stand in a different position for the purposes of the statute of limitations. Plaintiff had until May 13, 2023 to file an action under Section 1983 for these injuries. Her claims about Defendants' May 13, 2021 conduct were timely as of April 18, 2023, the date of filing the original complaint.

11

Defendants' challenges to this conclusion fail.  First, Defendants suggest that the proper filing date for the statute of limitations is June 13, 2023, the date of the filing of the Amended Complaint, which would place the events of May 13, 2021 outside the timely period.  (Defs.' Mot. to Dismiss at 4).  But it is settled law that an amended pleading relates back to an original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  FED. R. CIV. PRO. 15(c)(1)(B).  Plaintiff's claims as outlined in the Amended Complaint, relating to damages from dumping and demolition on the Coronet Village properties, clearly relate back to the original filing outlining one instance of such conduct.  (See Compl. at 2).  Indeed, the only date provided in the initial complaint is the discovery of damage to the properties on May 13, 2021.  (*Id.*)  Thus, Plaintiff's original filing date—April 18, 2023—is the relevant date, rendering claims arising on May 13, 2021 timely filed

Second, Defendants contend that the court must ignore Plaintiff's allegations arising from May 13, 2021 because "none of the dates after April 6, 2021, are pleaded in Plaintiff's Complaint." (Defs.' Reply [29], 2).  This is not literally true—Plaintiff's original complaint explicitly describes a demolition discovered on May 13, 2021.  (*See* Compl. [1] at 2).  But Defendants are correct that Plaintiff's Amended Complaint does not mention May 13, 2021, and that Plaintiff only mentions this date again in her opposition brief.  As explained above, however, the court may consider facts introduced in an opposition brief "when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint."  *Gutierrez*, 111 F.3d at 1367 n.2 (citations omitted).  Here, Plaintiff's Amended Complaint alleges that "on or about April 6, 2021 [sic] *thru present*" Defendants caused damage to her property.  (Am. Compl. ¶ 15) (emphasis added).  The more specific dates she identifies in her opposition brief, including the reference to May 13, 2021, are consistent with the date range provided in the Amended Complaint.

Lastly, Defendants contend that Plaintiff's reference to demolition to her property on May 13, 2021 is inapposite because it refers to a property at 15411 Oakley Avenue, which Plaintiff

does not own. (Defs.' Reply at 2).  Defendants refer to the language in Plaintiff's handwritten timeline where she details the following entry for May 13, 2021: "Plaintiff noticed new debris and side wall collapsed on property next to 15411 Oakley Avenue, Harvey."  (Ex. E to Pl.'s Opp'n). Defendants read this statement as describing damage not to the "property next to 15411 Oakley Avenue, Harvey," but rather to "15411 Oakley Avenue" itself.  Reading the allegations in the light most favorable to Plaintiff, however, as required at this stage, she has plausibly alleged damage to a sidewall on a property "next to" 15411 Oakley Avenue—property that she owns—not to 15411 Oakley Avenue itself.  Furthermore, the entry is corroborated by descriptions in Plaintiff's memorandum in opposition ("[o]n or about May 13, 2021 . . . Plaintiff arrived at her property to notice there had been new debris dumped, and the side wall had collapsed and there was debris inside of my home") and by the description in the original Complaint itself that state in no uncertain terms that the damage discovered on May 13, 2021 was to Plaintiff's own property. (See Pl.'s Opp'n [23] at 2; Compl. at 2).  Plaintiff has unambiguously alleged damage on May 13, 2021 to her own property.

### C. Conspiracy Claims

As the court is dismissing Plaintiff's claims under §§ 1985 and 1986 for reasons discussed below, *see infra* p. 21, it does not determine the timeliness of such claims.

## II. Plausibility of Section 1983 Claims

Defendants have urged that Plaintiff's factual allegations do not state a claim under § 1983. To state a claim under § 1983, a plaintiff must plead facts sufficient to show that "the plaintiff was deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).  An action is taken "under color of law" when it involves the misuse of a power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir.1997) (quoting *West v. Atkins*, 487 U.S. 42, 49, (1988)).  Claims under § 1983 can be brought both against individual municipal

officers and against municipalities directly.  See *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  A municipality acts "under the color of law" in violation of § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort*." Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, (1978).

Plaintiff in this case has brought claims under § 1983 against the City of Harvey as well as against the Mayor, Christopher Clark, in both his official and individual capacity. (See Am. Compl. at 5-6).  As Defendants rightly note, an action against a municipal officer acting in official capacity is equivalent to—and thus duplicative of—to a claim against the municipality itself. *Graham*, 473 U.S. at 165-166 ("Official-capacity suits, in contrast, " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ") (quoting *Monell*, 436 U.S. at 690 n. 55).  In effect, Plaintiff has two theories of liability, a *Monell* claim against the City of Harvey and an individual-capacity claim against Clark.  A preliminary question for any § 1983 claim is whether Plaintiff has actually suffered a constitutional injury.  *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) ("[P]laintiff must initially prove that he was deprived of a federal right. That's the first step in every § 1983 claim, including a claim against a municipality under *Monell.*").  Thus, the court considers whether Plaintiff (1) has sufficiently alleged that she suffered a constitutional injury, (2) has an actionable claim against the City under *Monell*, and (3) has an actionable claim against Clark in his individual capacity.

### A. Deprivation of Federal Right

Plaintiff appears, albeit inconsistently, to ground her civil rights claims in takings (*see* Am. Compl. ¶ 19) and procedural due process (*see* Am. Compl. ¶ 18) under the Due Process Clause of the Fourteenth Amendment.

A takings claim arises when "the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).  "[T]he Court has

long treated government-authorized physical invasions as takings requiring just compensation." *Id.* Plaintiff has alleged that Defendants caused or otherwise sanctioned City employees to trespass and perform partial demolitions on her property. On its face, these allegations present a facial claim of a physical taking in the form of a physical invasion of Plaintiff's properties and restriction on Plaintiff's ability to use the partially demolished properties. Moreover, as the Supreme Court explained in *Knick v. Township of Scott*, Plaintiff need not have sought compensation under state law before pursuing a takings claim under § 1983. *See* 588 U.S. 180, 194 (2019) (overruling *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)).

Plaintiff's allegations that Defendants commenced demolition of her property without notice also gives rise to a procedural due process violation. It is self-evident that "the Constitution requires some kind of a hearing before the State deprives a person of . . . property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Even where real property is deemed to be a nuisance or hazardous, "[t]he protection that the federal Constitution offers to property owners is notice and an opportunity for a hearing at which the structure's condition can be ascertained based on factual presentations." *Willow Way, LLC v. Village of Lyons*, 83 F.4th 655, 656 (7th Cir. 2023); *see also* 14 A.L.R.2d 73 § 2 ("To destroy [a property] when it is not harmful in its nature or condition is to deprive the owner of it without due process of law and to deny him the equal protection of the laws.") (collecting cases). Plaintiff alleges that City employees deprived her of her property and violated her due process rights by dumping debris on her property and commencing the demolition of her properties without prior notice or an opportunity to be heard. At this stage there is no basis to conclude that the properties in Coronet Village were a public nuisance, or that the City sought to demolish the properties on the basis that they were abandoned or hazardous. *Cf. Choate v. Lemmings*, No. 07-CV-206-JHP, 2007 WL 3046499 (E.D. Okla. Oct. 17, 2007) (dismissing § 1983 claim under 12(b)(6) where complaint alleged the City demolished building for being a public hazard and complaint did not claim that property was not a hazard).

15

In their Motion to Dismiss, Defendants do not appear to contest that, as alleged, Plaintiff has suffered a deprivation of property. Rather, Defendants claim that Plaintiff's claims do not rise to the level of a due process violation because the Amended Complaint only alleges negligence. (Defs.' Mot. to Dismiss at 5). Defendants note entries in Plaintiff's Original and Amended Complaint using language that sounds in negligent, rather than deliberate, conduct. (*Id.*). Defendants are correct that negligent conduct cannot serve as the basis for a due process violation, *see Daniels v. Williams,* 474 U.S. 327, 331 (1986), and that Plaintiff's allegations at times use language that sounds in negligence. (*See e.g.*, Am. Comp. ¶ 16 ("City of Harvey and Clark [sic] known or should have known that they did not have any rights to Plaintiff's properties or land."). The more obvious reading of the Amended Complaint, however, is that the conduct she is challenging was deliberate. (*See, e.g.*, Am. Compl. ¶ 9 ("The defendant Christopher Clark . . . deliberately violated Plaintiff's constitutional rights to due process . . . .") ("Defendants caused Plaintiff to be injured by demolishing her estate . . . while knowing that the properties did not belong to the City . . . ."), ¶ 19 ("Defendants vandalized and destroyed for the purpose in furtherance of the conspiracy . . . to deprive Plaintiff of the value of her property . . . ."). This language suggests that the alleged conduct was deliberate and purposeful. Indeed, it is hard to conceive of dumping and demolition as being accidental or negligent (as opposed to purposeful) acts.

Defendants have further argued that no due process violation can be claimed here because Plaintiff has not alleged that the state failed to provide an adequate post-deprivation remedy. (Defs.' Mot. to Dismiss at 10). Indeed, it is settled law under the Supreme Court's decision in *Parratt v. Taylor* that a Plaintiff cannot claim a deprivation of property under § 1983 for a "random and unauthorized act by a state employee" unless there is a showing of the absence of a "meaningful postdeprivation" remedy. 451 U.S. 527, 541 (1981), *overruled on other grounds Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt* to intentional deprivations of property by state employees).

As a preliminary matter, *Parratt* does not apply to claims brought under *Monell* against municipalities directly, so this argument would not eliminate Plaintiff's claims against the City. *Wilson v. Town of Clayton*, 839 F.2d 375, 380 (7th Cir. 1988) ("[A] complaint asserting municipal liability under *Monell* by definition states a claim to which *Parratt* is inapposite."). Thus, Defendants' argument under *Parratt* could apply only to Plaintiff's claims against Clark acting in his personal capacity. But her allegations are not consistent with a theory that demolition of her property was the product of a whim of a city official. A fair reading is that Plaintiff has alleged a deliberate plan by the Mayor and the City to unlawfully damage her property, evidently with the goal of redevelopment. In *Luster v. Village of Ashmore*, the Seventh Circuit considered a similar allegation that a defendant village, "as part of its plan to establish a municipal park, deliberately deprived [plaintiff] of his property interest and attempted to remove him without prior notice and an opportunity to be heard." 76 F.4th 535, 537-38 (7th Cir. 2023). There, the court reasoned that *Parratt* did not apply because "[p]re-deprivation notice and hearings are not impractical, and therefore fall outside the narrow *Parratt* exception, for deliberate, planned deprivations of property." *Id*. Because, as alleged, Defendants engaged in a deliberate, planned deprivation rather than a random act, the court finds *Luster* applicable and concludes that Plaintiff was not required to plead that state post-deprivation procedures were inadequate.

### B. *Monell* Claims Against City of Harvey

To succeed on a *Monell* claim against a municipality for causing the deprivation of federal rights, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy; (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury.*" Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see also Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017). To establish that an action is taken pursuant to a municipal policy under the first element, Plaintiff must be able

to identify either "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted); *see also Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690).

Defendants argue that Plaintiff's *Monell* claim fails at the first element. (Defs.' Mot. to Dismiss at 7-8.) As they correctly observe, Plaintiff does not explain the legal grounds of her *Monell* claim beyond summarily asserting that her injury was the result of an ambiguous "custom and practice" to avoid providing her with just compensation (Am. Compl. ¶ 11), and that Mayor Clark was the City's "final policy maker." (*Id*. ¶ 10). Defendants contend that these allegations alone are insufficient to serve as the basis for a *Monell* claim, even under the 12(b)(6) standard.

The court need not split hairs at this stage of the litigation, however, as to whether Plaintiff has precisely pleaded one specific theory (of the first element) of *Monell* liability. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). "It is factual allegations, not legal theories, that must be pleaded in a complaint." *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014). Even if it is not fully clear from Plaintiff's complaint formalistically which *Monell* theory her claims fit into, her factual allegations cannot be read to suggest anything other than an "official policy"—*of some sort*—caused her constitutional injuries. *See Monell*, 436 U.S. at 691. Plaintiff has alleged that the actions depriving her of her property were taken as part of a deliberate scheme by the City and the Mayor to circumvent eminent domain procedures and redevelop the Coronet Village area without compensating or notifying property owners. (*See* Am. Compl. ¶¶ 9, 19; *see also* Pl's Opp'n at 11). Reading her pro se allegations liberally and assuming their truth, one of the following inferences must follow: (1) Mayor Clark was acting as a final policymaker for the City in executing the City's

redevelopment plan in a manner violating Plaintiff's rights; (2) the City Council as final policymaker ratified Mayor Clark's actions by failing to cease the demolition despite Plaintiff's repeated appeals, or (3) the City adopted the plan to circumvent eminent domain as a matter of official policy. Each of these conclusions would give rise to *Monell* liability under a final policymaker, ratification, or official policy theory, respectively, and Defendants have not proffered a plausible alternative reading. At the very least, Plaintiff has pleaded a "series of acts violative of constitutional rights" that "raise an inference of municipal policy." *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir. 1981).[5] Such an inference is sufficient to get Plaintiff past the pleading stage.

That leaves the remaining elements of *Monell* liability—culpability and causation. For a municipality to be "culpable" of a violation of constitutional rights, it must be shown that the policymakers "were deliberately indifferent to a known risk that the policy would lead to constitutional violations." *Hall*, 953 F.3d at 950. As discussed above, Plaintiff's pleadings can only be read to allege a deliberate deprivation of her rights. *See supra* p. 16. Whether this deliberate deprivation is ultimately attributable to Mayor Clark acting as a final policymaker, or to the City Council in adopting a policy to circumvent eminent domain, Plaintiff has sufficiently claimed that her injury was not the result of merely negligent or unwitting conduct. Causation is similarly well-established by Plaintiff's pleadings, as she has claimed that the trespass and

---

[5] Defendants cite a smattering of cases in which courts have found that plaintiffs failed to sufficiently plead final policymaker liability under *Monell*. (*See* Defs.' Mot. to Dismiss at 9-10). Without delving into the facts of each case, the key distinction between Plaintiff's allegations and the claims in Defendants' cited cases is that Plaintiff's allegations do not describe isolated incidences of a wrongful termination, arrest, or officer misconduct—she alleges a series of conduct violating her rights pursuant to municipal redevelopment plan that was carried out over years. With claims involving isolated incidences of officer misconduct, there is a natural concern that plaintiffs are merely attempting to hold municipalities liable under a *respondeat superior* theory disallowed under *Monell*. *See Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir. 1985) ("[A] municipality can be held liable only for its regular procedures, not for the isolated independent tort of an individual employee . . . ."). In contrast, a plaintiff who alleges "a pattern or series of acts violative of constitutional rights will in many cases raise an inference of municipal policy." Powe, F.2d at 651. Plaintiff's allegations fit into this latter category.

demolition of her property was a direct result of Defendants' authorizing City employees to do so. (*See* Am. Compl. ¶ 15). The alleged policy adopted by the Mayor and City was clearly the "moving force" behind Plaintiff's injury. Further discovery is sure to shed light on whether Plaintiff can in fact demonstrate that the City policymakers were aware of her property interest in the Coronet Village properties, and may indeed show, as Defendants contend, that the City was merely negligent in believing that Plaintiff's properties were "abandoned." For now, however, Defendants motion to dismiss Plaintiff's *Monell* claims is denied.

### C. Claim Against Clark in Individual Capacity

A § 1983 claim against a municipal officer in his personal capacity is subject to fewer elements than a claim against the municipality itself. *See Graham*, 473 U.S. at 166 ("[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right . . . . More is required in an official-capacity action."). To recover against an individual for the deprivation of a constitutional right, a plaintiff must show that the individual is "personally responsible" for the deprivation. *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015). An individual is personally responsible for a constitutional deprivation if they "act[ ] or fail[ ] to act with a deliberate or reckless disregard of plaintiff's constitutional rights" or "if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Thus, even if an official does not personally carry out an offending event, he may be liable under § 1983 if he "know[s] about the conduct and facilitate[s] it, condone[s] it, or turn[s] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Here, Plaintiff has pleaded enough facts to create a plausible claim that the alleged demolition and dumping of debris on her property occurred under the knowledge, condonation, and facilitation of Mayor Clark. Plaintiff has claimed that Mayor Clark had personal knowledge that the Coronet Village properties belonged to Plaintiff, as he had sat in her dining room at some

point prior to the demolition (Am. Compl. ¶ 17) and, knowing that she claimed ownership to the relevant properties, "caused employees to illegally trespass onto Plaintiff's property and illegally dump debris and . . . causing demolition." (*Id.* ¶ 15). The Amended Complaint further claims that Mayor Clark "deliberately violated Plaintiff's constitutional rights to due process by depriving her of her property." (*Id.* ¶ 8). Indeed, it was Mayor Clark, Plaintiff asserts, who filed the Resolution with the County Recorder in the first place, just before the dumping and demolition began. (Pl's Opp'n at 5).

Plaintiff has pleaded facts that provide a plausible basis for finding that Mayor Clark was aware that the Coronet Village properties belonged to Plaintiff, that he caused City employees to trespass and commence demolition on the properties, and that he either facilitated this continuing demolition or turned a blind eye to the conduct. The motion to dismiss claims against Mayor Clark is denied.

## III.    Section 1985 and Section 1986 Claims

To state a claim under 42 U.S.C. § 1985 for a conspiracy to deprive a plaintiff of her constitutional rights, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997) (citations omitted). As Defendants observe, to meet the second element of a § 1985 claim, the claim "must be predicated on 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.' " *Id.* (*quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, Plaintiff has not attempted to plead that she is part of a protected class, or that the conspiracy to deprive her property was based on racial or class-based animus. Absent such allegations, the claim under § 1985 must be dismissed without prejudice. Because a finding of a

§ 1985 conspiracy is a prerequisite to finding of a § 1986 claim, *see Williams v. St. Joseph Hosp.*, 629 F.2d 448, 452 (7th Cir. 1980), Plaintiff's § 1986 claim is also dismissed without prejudice.

## IV.    State Law Claims

Defendants seek to dismiss Plaintiff's state law conversion claim (Count III) as duplicative of Plaintiff's civil rights claims.  (Defs.' Mot. to Dismiss at 12).  Defendants argue that because the conversion claim is based on the same alleged deprivation, the Count must be dismissed.  (*Id.*)  Defendants further argue that state law conversion claims cannot serve as a basis for a civil rights action.  (*Id.*)

The court reads Counts III and IV differently.  As the titles of the Counts (Conversion and Trespass to Land) reflect, these are state law claims—not civil rights actions—that the Plaintiff has brought under this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  (See Pl.'s Opp'n at 7-8 (stating that state claims are being brought under "pendent" jurisdiction, which was codified as supplemental jurisdiction in § 1367)).  As such, the fact they are based on the same factual predicate as the Plaintiff's civil rights claims is precisely what gives this court jurisdiction to hear the claims.  See 28 U.S.C. § 1367.  *Barrow v. Blouin*, cited by Defendants, is inapplicable here.  In *Barrow*, the plaintiff brought two claims under the Fourth Amendment—unreasonable seizure and false arrest—against a police officer, arising from the same arrest.  38 F. Supp. 3d 916, 919 (N.D. Ill. 2014).  Finding that the two Fourth Amendment claims "involve[d] the same operative facts and same injury, and that require proof of essentially the same elements" and because "a Fourth Amendment false arrest claim, as opposed to a Fourth Amendment unreasonable seizure claim, is the appropriate claim for [plaintiff] to assert," the court dismissed the unreasonable seizure claim as duplicative. *Id*. at 920.  In contrast, Plaintiff's state law claims do not require proof of "essentially the same elements" as her federal civil rights claims, as her claims for conversion and trespass do not require any proof of acting "under color of law" or that

action was taken pursuant to an official policy or custom.[6]   Indeed, federal courts routinely entertain state law claims arising from the same facts as federal civil rights claims, under supplemental jurisdiction.  *See, e.g.*, *Gates v. Towery*, 456 F. Supp. 2d 953 (N.D. Ill. 2006), *aff'd sub nom. Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2010) (allowing plaintiffs to proceed with claims under due process and state law conversion and replevin), *Armstrong v. City of Calumet City*, 22-CV-03462, 2022 WL 17404489 at *3 (N.D. Ill. Dec. 2, 2022) (finding plaintiff stated a claim under both § 1983 and state law conversion and trespass); *see also Kimbrough v. O'Neil*, 523 F.2d 1057, 1059 (7th Cir. 1975), *on reh'g*, 545 F.2d 1059 (7th Cir. 1976) (finding that trial court abused discretion by declining to exercise pendent jurisdiction over state law conversion claim arising from same facts as § 1983 claim).   Defendants' motion to dismiss the state law claims, on these grounds, is denied.

## CONCLUSION

The motion to dismiss [12] is granted in part and denied in part.  Plaintiff's claims arising from Defendant's conduct occurring on April 6, 2021 and April 15, 2021, are barred by the statute of limitations; those claims are dismissed with prejudice.  Her claims under 42 U.S.C. §§ 1985 and 1986 are dismissed without prejudice.  Plaintiff's claims against Christopher Clark in his official capacity are dismissed as redundant.  Her claim under 42 U.S.C. § 1983 against Christopher Clark in his personal capacity for the actions occurring on or after May 13, 2021, and her *Monell* claim against the City of Harvey survive this motion, as do her state law claims in Counts III and IV.

ENTER:

Dated:  September 24, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

---

[6]       *See Dial v. City of O'Fallon*, 81 Ill. 2d 548, 553-54, 411 N.E.2d 217, 220 (1980) (describing elements of trespass to land under Illinois law), *Weisberger v. Weisberger*, 2011 IL App (1st) 101557, ¶ 45, 954 N.E.2d 282, 289 (2011) (describing elements of conversion under Illinois law).